THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
HENRY G. JACKSON, JR., Defendant-Appellee.

Fourth District   No. 14822

Opinion filed September 29, 1978.

Edwin R. Parkinson, State's Attorney, of Jacksonville (Basil G. Greanias, Assistant State's Attorney, and Robert C. Perry and Gary J. Anderson, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Paul C. Verticchio and Denis A. McGrady, Sr., both of Gillespie, for appellee.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:

We here review a determination by the circuit court of Morgan County that grand jury proceedings resulting in defendant Henry G. Jackson's indictment for aggravated battery and official misconduct violated his due process rights.

On May 5, 1977, a Morgan County grand jury returned 25 indictments against defendant who was then Morgan County sheriff. One indictment charged him with aggravated battery and official misconduct in connection with an alleged November 5, 1976, altercation with Russell Ezard, a Morgan County commissioner. After a hearing on defendant's October 14, 1977, second motion to quash, the trial court entered an order quashing that indictment.

In its order, the trial court listed three reasons for its actions, the combined effect of which was found to violate defendant's due process rights. These were: (1) the submission to the grand jury of a document

described as the "black book" which contained, among other things, testimony of witnesses as to the altercation incident given before a prior grand jury which had returned a no true bill as to the incident; (2) the fact that the "black book" contained defendant's testimony before that prior grand jury, even though defendant did not testify before the indicting grand jury; and (3) the presence at and participation in the grand jury proceedings of an investigator who interrogated a certain witness. The trial court carefully noted that the presence of any one of these factors alone would not have violated defendant's right to due process, but stated that "when you add them all up, this court is not in a position to say that the Defendant's rights were not violated."

The evidence presented on the motion to quash consisted of the transcript of the proceedings before the indicting grand jury with a copy of the "black book" included as an exhibit. Seven witnesses were shown to have testified. Several of them were eyewitnesses to the occurrence while others testified to being nearby. They indicated that the battery was the result of Ezard's and another commissioner's refusal to sign a requisition authorizing payment of expenses to send a deputy sheriff to a training institute in California. According to the testimony, defendant became angry upon the refusal, grabbed Ezard and hit him.

The special prosecutor conducting the May 2-4 grand jury proceedings was granted leave of court to have present at those proceedings an investigator for the Illinois State Police. During the testimony of Lloyd McDannald, the Morgan County deputy sheriff for whom the requisition was sought, that investigator was permitted to ask McDannald five questions. The questions concerned the witness' conversation with defendant prior to the alleged battery during which the trip and the requisition's payment were discussed.

The "black book" submitted to the indicting grand jury was a bound volume entitled "MORGAN COUNTY GRAND JURY, Summary of Cases, SHERIFF HENRY G. JACKSON, JR. Investigation, May 2-3, 1977 Setting, prepared by SPECIAL STATE'S ATTORNEY BASIL G. GREANIAS." The book contained four sections: (A) a section entitled "Statutes Involved," detailing statutory language defining particular crimes and grand jury procedures, some of which were underlined; (B) a section entitled "Roster of Cases," listing names of individuals and subject matter of offenses; (C) a section entitled "Schedule of Cases," listing the cases to be presented to this grand jury, the witnesses for those cases, and the time at which the cases would be presented; and (D) a section entitled "Individual Cases—Investigation Reports," which comprised the great majority of the book.

The last section contained 30 cases presented to the grand jury alleging defendant's illegal acts, case #27 of which led to the indictment here in

question. A review of case #27 shows that therein are contained synopses of interviews with potential witnesses concerning other requisition requests made by defendant and the alleged altercation between defendant and Ezard. The bulk of the material listed under case #27 is a report of the grand jury proceedings which took place in "December, 1976" and contains the testimony of four witnesses, each of whom subsequently testified before the indicting grand jury. Additionally, case #27 lists the testimony given by defendant on his own behalf before the prior grand jury. Other than answers to preliminary questions by the prosecutor, his testimony consisted of narrative statements and answers to questions by the grand jurors. It is noted that at the commencement of the proceedings, the prosecutor informed the grand jury that although defendant had no right to appear before them, he was being permitted to appear upon his request to express "his version of the incident." Defendant's counsel was also present during defendant's testimony. That grand jury did not indict defendant.

● 1  The parties agree that the trial court has inherent power to dismiss an indictment when its return has been obtained by a violation of the due process rights of the accused (*People v. Lawson* (1977), 67 Ill. 2d 449, 367 N.E.2d 1244), and that the exertion by the prosecutor of undue pressure or influence upon the grand jurors is such a violation. (*Gitchell v. People* (1893), 146 Ill. 175, 33 N.E. 757.) Recently, the supreme court recognized by dictum in *Hughes v. Kiley* (1977), 67 Ill. 2d 261, 367 N.E.2d 700, that denial of the due process rights of a defendant before a grand jury by misconduct of a prosecutor is an issue that can be properly raised. Nevertheless, the supreme court has also fairly recently indicated that one challenging the propriety of an indictment upon the basis of prosecutorial misconduct faces a formidable task (*People ex rel. Sears v. Romiti* (1971), 50 Ill. 2d 51, 277 N.E.2d 705, *cert. denied* (1972), 406 U.S. 921, 32 L. Ed. 2d 121, 92 S. Ct. 1778). The State maintains that here the record fails to show misconduct on the part of the prosecutor sufficient to deprive defendant of due process.

It is not easy to ascertain the defendant's general complaint concerning the use of the "black book." Most of its contents consisted of transcripts of prior grand jury testimony which was hearsay. Defendant concedes that a grand jury may return an indictment based on hearsay (*People v. Bissonnette* (1974), 20 Ill. App. 3d 970, 313 N.E.2d 646). He argues, however, that presentation of the book was improper because it contained synopses of the testimony of witnesses, underlining of statutory references and a statement of the scheduling of the witnesses to appear before the grand jury. We are not aware of any case ruling any of the foregoing to be improper. The book did contain reference to matter involving other offenses but a grand jury is not restricted to considering

only evidence of a particular offense alleged to have been committed by an accused and often considers other possible charges.

Defendant relies upon *United States v. Wells* (Idaho 1908), 163 F. 313, and *United States v. Bruzgo* (3d Cir. 1967), 373 F.2d 383. *Wells* concerned an attack on grand jury indictments in the form of a plea in abatement which alleged prosecutorial misconduct in procuring the indictments by the prosecutor's appearing before the grand jury during its deliberations, arguing the evidence before that body, and explicitly demanding the return of certain indictments. *Bruzgo* condemned the practice of a prosecutor's use of threatening and abusive language towards a grand jury witness known to have business dealings with defendant, the "target individual" of the proceedings, upon her claim of the fifth amendment privilege, but ruled that since that witness had not testified, defendant's right to be indicted by an unbiased grand jury had not been violated. The submission by the prosecutor to the grand jury of the "black book" here is unlike the occurrences in *Wells* and *Bruzgo*. The record is void of any indication that incidents such as occurred in those cases accompanied the submission of the "black book" here.

The "black book" also contained a transcript of defendant's testimony given before a prior grand jury that returned a no true bill as to the instant alleged offense. Defendant asserts that the prosecutor's presentation of that transcript nullified his fifth amendment privilege against self-incrimination. In support thereof, he points to language from a concurring opinion in *United States v. Mandujano* (1976), 425 U.S. 564, 598, 48 L. Ed. 2d 212, 235, 96 S. Ct. 1768, 1787, that absent an intentional and intelligent waiver of the privilege against self-incrimination, the State may not call before the grand jury "one [against] whom it has probable cause."

Defendant's testimony before the first grand jury, however, was given freely and voluntarily. It was not requested by the State but was permitted by it. Present with defendant during that testimony was his counsel. Nothing in the record supports the conclusion, nor does defendant contend, that the testimony as initially given was compelled.

Numerous judicial decisions have refused to invalidate indictments in the face of an alleged denial of the privilege against self-incrimination where it was shown that an accused testified as a witness before the grand jury at his own request. (See Annot., 38 A.L.R. 2d 225 (1954).) These decisions are based upon the absence of compulsion to testify. Defendant was not compelled to testify here.

Defendant does not directly dispute that his testimony was voluntarily given to the prior grand jury but asserts that to submit a transcript of it to the subsequent grand jury without his further consent and waiver was the same as then forcing him involuntarily to give the testimony. No case has

been called to our attention so ruling. A statement originally made by an accused under circumstances free of compulsion of the nature prohibited by the fifth amendment is not, by its subsequent use, logically rendered to have been compulsively produced. When, as here, an accused's prior testimony before a grand jury was, without accused's consent, submitted to a subsequent grand jury in *United States v. Garcia* (2d Cir. 1970), 420 F.2d 309, the fifth amendment issue was not raised or discussed.

In *Garcia*, the issue was whether Federal Rule of Criminal Procedure 6(e) (Fed. R. Crim. P. 6(e)), concerning the secrecy of grand jury proceedings, was violated. That rule stated:

> "Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties."

The reviewing court held that the rule was not violated. Section 112—6(b) of the Illinois Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 112—6(b)), concerning secrecy of grand jury proceedings, similarly states:

> "(b) Matters other than the deliberations and vote of any grand juror may be disclosed by the State's Attorney solely in the performance of his duties."

We conclude that the prosecutor here presented the transcript of defendant's prior testimony in the performance of his duties and was therefore acting in conformity to law.

■■ We thus conclude that neither the presentation of the transcript of defendant's prior grand jury testimony nor the presentation of the other material in the "black book" constituted error.

■■ We also note that even if improper evidence had been presented to the grand jury, Illinois cases would traditionally uphold the propriety of the indictment as long as, as here, competent witnesses testified before the grand jury. (*People v. Price* (1939), 371 Ill. 137, 20 N.E.2d 61, *cert. denied* (1939), 308 U.S. 551, 84 L. Ed. 463, 60 S. Ct. 94; *People v. Jones* (1960), 19 Ill. 2d 37, 166 N.E.2d 1.) In *United States v. Calandra* (1974), 414 U.S. 338, 38 L. Ed. 2d 561, 94 S. Ct. 613, the United States Supreme Court stated by way of dictum that the foregoing rule was applicable even though some evidence presented violated the accused's privilege against self-incrimination.

Finally, the State admits that it was error to permit the investigator for the State Police to ask questions of a grand jury witness but contends that the error was harmless. Defendant maintains that the questions asked were directed to belittling the integrity and character of the defendant, that prejudice thus resulted, and that the trial court properly considered this occurrence in quashing the indictment.

■■ The decisions relied upon by each party to support its position agree

that prejudice to the accused must be demonstrated in order to require dismissal (*People v. Hartenbower* (1918), 283 Ill. 591, 119 N.E. 605; *People v. Moretti* (1953), 415 Ill. 398, 114 N.E.2d 337; *People v. Munson* (1926), 319 Ill. 596, 150 N.E. 280; and *People v. Massarella* (1977), 53 Ill. App. 3d 774, 368 N.E.2d 507, *appeal allowed* (1978), 67 Ill. 2d 594). The questions asked by the investigator covered matters previously referred to during the proceedings and sought further explanation. The State Police investigator questioned the witness regarding (a) defendant's reaction when the requisition in question was refused, (b) whether the trip and the requisition had been discussed by defendant previously, and (c) whether defendant had indicated that the witness would go on the trip. We fail to see how these questions prejudiced the defendant.

The nonprejudicial questioning of the witness by the State Police investigator is the only error we find in the proceedings before the grand jury. That questioning did not deprive the defendant of due process of law and did not justify the dismissal of the indictment. We reverse and remand for further proceedings.

Reversed and remanded.

MILLS and TRAPP, JJ., concur.